## BUTE v. HOLLAND.
### No. 4109.

Court of Civil Appeals of Texas. El Paso.
July 10, 1941.

Rehearing Denied Oct. 9, 1941.

Tom C. Mann and Mann & Mann, all of Laredo, for appellant.

Alvin S. Moody, Jr., of Houston, for appellee.

PRICE, Chief Justice.

This action was filed in the District Court of Jim Hogg County by W. H. Holland (appellee), as plaintiff, against James House Bute (appellant), as defendant. The trial was before the court and jury, submission on special issues, and the court, after setting aside the answer of the jury to Special Issue No. 15, entered judgment in favor of the plaintiff in the sum of $760. From this judgment the defendant Bute has perfected this appeal.

Hereafter the parties will be referred to in accordance with their designation in the trial court.

The first amended original petition upon which plaintiff went to trial alleged in substance that on or about September 29, 1939, he sold to defendant his right, title and interest in and to a certain oil and gas lease

executed by Isabel R. de Gutierrez and others to Neilson, Trustee, such lease dated October 20, 1934. However, his assignment was only insofar as such lease covered a certain 40-acre tract of land in Jim Hogg County. The petition described the 40 acres. It is further alleged that the assignment was delivered to defendant on October 6, 1939; that the assignment recites a consideration of one dollar, but in truth and in fact the real consideration was $800, and defendant paid on delivery of the assignment only the sum of $40 and promised to pay the balance of $760 on demand. Demand and failure and refusal to pay were averred. Plaintiff sought judgment for the sum of $760, with a foreclosure of the vendor's lien on the lease.

Defendant's first amended original answer consisted of a general exception, general denial, and special defenses. Among other matters, he pleaded specially that the alleged sale was a written contract by which plaintiff bound himself to convey the lease in question to defendant. The alleged written contract was as follows:

"September 29, 1939
"Mr. W. H. Holland
  "2570 N. MacGregor Dr.
  "Houston, Texas.

"Dear Sir:

"You are the owner through assignment from the Texas Company of an oil, gas and mineral lease covering 500 acres of the Gutierrez land located in Jim Hogg County, Texas, said assignment being conditioned on your drilling a test well in accordance with the agreement dated September 25, 1939 between The Texas Company and yourself.

"You obligate yourself to begin operations for the drilling of a test well on or before September 30, 1939, said well to be located 330 feet West of the East line and 330 feet North of the South line of Tract No. 4 of Survey 164, Jim Hogg County, Texas, and drilled with due diligence to a depth of 3,500 feet, unless oil and/or gas be found in paying quantities at a lesser depth, and in accordance with your agreement with The Texas Company.

"You bind yourself in the drilling of said test well to properly core the Government wells sand horizon, Loma Novia sand horizon, Mirando sand horizon, and if encountered the Pettus sand horizon. You bind yourself to furnish Schlumberger or similar type electrical log of said well.

In the event oil or gas shows are found in any of the sands above mentioned you agree to make drill stem test or tests; and in the event such drill stem test or tests justify, you agree to set casing and make every reasonable effort to complete a commercial oil and/or gas well.

"You are to give to me or my representative all information as developed in the drilling of said test well, including copy of driller's log, copy of electrical log, access to cores and any other information pertaining to said test well.

"You agree to sell and forthwith assign to me the lease subject only to land owner's ⅛th royalty, covering the following described tract of land: Tract No. Nine (9) containing 40 acres or more of the subdivision of the G. Gutierrez Survey No. 164, Jim Hogg County, Texas, as evidenced by plat hereto attached.

"I agree to pay to you on delivery of said assignment of lease the sum of $40.00 cash and upon complete fulfillment of the drilling obligation by you as above set out I agree to pay to you the sum of $760.00 cash.

"You agree to furnish me photostatic copy of the Gutierrez lease, evidence that said lease is in good standing and copy of drilling agreement between The Texas Company and yourself.

"Your acceptance of the terms of this letter agreement is evidenced by your signature in the space below provided.

"Yours very truly,
      "(Signed)   Jas. House Bute
"Accepted this 29th day of September, 1939.
  "W. H. Holland (Signed)"

That on the assignment of the lease defendant paid plaintiff the sum of $40; that plaintiff had failed to perform in some fourteen or fifteen different particulars his obligation under the contract, setting up specifically each alleged breach. These two instruments were the trial pleadings. In considering same we will regard, in accordance with Article 2005, R.S.1925, all matters specially pleaded by defendant in defense, as denied by plaintiff.

By numerous assignments and propositions thereunder defendant raised in substance that there was a fatal variance between the pleadings and proof on the part of the plaintiff and, therefore, plaintiff was not entitled to recover, and the court should have instructed a verdict in his favor.

Under plaintiff's petition and defendant's general denial, the issue was tendered as to whether plaintiff did make the assignment on the terms alleged. Under defendant's special plea and the provisions of Article 2005, issues tendered were, first, was the contract as alleged by defendant; if so, as to whether plaintiff failed to comply with same in all or any of the particulars alleged by defendant in his special plea. In short, issues were raised by defendant's answer and the denial there attributed to plaintiff of the compliance or noncompliance by plaintiff with the contract alleged by defendant.

In our opinion the pleadings raise issues as to failure of compliance with the terms of either of the two contracts set up by the pleadings of the parties. Issues of modification, estoppel or waiver are not within the content of the pleadings.

The court submitted the case to the jury on fifteen special issues. All, save the fifteenth, were answered in the affirmative, in substantial accord with the contentions of plaintiff. As to Issues Nos. 1 to 7, all of same were established by the uncontroverted testimony, and not issues in the case. This is perhaps not material as same were answered in accordance with the uncontradicted testimony. In substance, these seven issues found that a written contract had been entered into, setting forth the terms upon which the lease was sold to defendant; that plaintiff had assigned the lease to defendant; that a written contract had been entered into between the Texas Company and defendant, under which that Company bound and obligated itself to convey to plaintiff, under certain conditions, its interest in a portion of an acreage which included the acreage involved here; that this Company had executed and delivered to plaintiff such assignment; that plaintiff had commenced drilling before the lease expired a test well on the territory assigned by the Texas Company to him; that the drilling was continuously prosecuted until the completion of the well; that on or about November 3, 1939, defendant talked to plaintiff on the telephone.

Special Issue No. 8 was as follows: "Do you find from a preponderance of the evidence that defendant, in a telephone conversation with plaintiff on or about noon of November 3, 1939, told plaintiff that if plaintiff decided to set casing in the well plaintiff was drilling, at a depth of 3223 feet, that defendant would accept same as completing plaintiff's contract provided same was accepted by the Texas Company and all other interested parties? Answer 'Yes' or 'No.'" The answer was "Yes."

Special Issues Nos. 10, 11, 12, 13, 14 and 15 were as follows:

"Special Issue No. 10; Do you find from a preponderance of the evidence that defendant, in a telephone conversation with plaintiff on or about noon of November 3, 1939, told plaintiff that defendant would not demand Schlumberger or other electrical log of the well being drilled, if plaintiff decided to set casing in said well at a depth of 3223 feet? Answer 'Yes' or 'No.'" The answer was "Yes."

"Special Issue No. 11: Do you find from a preponderance of the evidence that defendant, in a telephone conversation with plaintiff on or about noon of November 3, 1939, told plaintiff that defendant would not demand that plaintiff drill the well plaintiff was engaged upon to 3500 feet, if plaintiff decided to set casing in said well at a depth of 3223 feet? Answer 'Yes' or 'No.'" The answer was "Yes."

"Special Issue No. 12: Do you find from a preponderance of the evidence that plaintiff, or plaintiff's attorney, made demand upon defendant or defendant's attorney, for the balance due, in the sum of $760.00, for an oil and gas lease upon the forty acre tract previously sold by plaintiff to defendant? Answer 'Yes' or 'No.'" The jury answered "Yes."

"Special Issue No. 13: (To be answered only if No. 12 had been answered in the affirmative) Do you find from a preponderance of the evidence that in making such demand upon defendant, plaintiff or plaintiff's attorney, furnished defendant, or defendant's attorney, photostatic copy of the Gutierrez Lease? Answer 'Yes' or 'No.'" The jury answered "Yes."

"Special Issue No. 14: (To be answered only if No. 12 had been answered in the affirmative) Do you find from a preponderance of the evidence that in making such demand upon defendant, plaintiff or plaintiff's attorney, furnished defendant or defendant's attorney, evidence that the Gutierrez lease was in good standing? Answer 'Yes' or 'No.'" The jury answered "Yes."

"Special Issue No. 15: (To be answered only if No. 12 was answered in the affirmative) Do you find from a preponderance of the evidence that in making such de-

mand upon defendant, plaintiff or plaintiff's attorney, furnished defendant or defendant's attorney a photostatic copy of the drilling agreement between the Texas Company and plaintiff? Answer 'Yes' or 'No.'" The jury answered "No."

In our opinion Special Issues 8, 9, 10 and 11 are not raised by the pleadings. No. 8 presented an issue of waiver or modification, which is not alleged. No. 10 relates to the same thing; the same is true as to No. 11.

Plaintiff offered in evidence the contract set up in defendant's answer and copied herein; the assignment of the lease in question to defendant dated October 6, 1939, and there was a recital therein as to consideration as alleged by plaintiff; the lease to Neilson, Trustee, by Mrs. Gutierrez; the assignment thereof to the Texas Company; and contract between the Texas Company and plaintiff, wherein on compliance with certain covenants as to drilling an oil well on a part of the leased land that it would assign to him 500 acres out of the Gutierrez lease. In this 500 acres is included the lease as to the 40 acres involved here.

The contract between the Texas Company and plaintiff is what is commonly called, as we understand it, a "farm-out" contract or lease. It was proved that the Texas Company had accepted the performance of the contract so far as it was concerned, and made due assignment of the lease in accordance with its contract with plaintiff.

Further, the testimony, we think, was sufficient to present the issue as to waiver of performance of the provisions of the contract of September 29, 1939, between plaintiff and defendant in so far as the failure to comply therewith was pleaded by defendant. Perhaps it would be more properly said a modification of the terms of the contract as to a performance of certain of its provisions.

The transaction involved occurred on November 3, 1939, when the well had reached a depth of about 3,223 feet. It was thought to be in oil sand by plaintiff, and that it was advisable to set the casing. By doing this he thought such a well as was contemplated by the contract with the Texas Company and the so-called "bottom-hole" letter could be brought in. His situation was, he must bring in a well or drill to the depth of 3,500 feet. Taking the steps requisite on the assumption that a producing well could be produced from the depth drilled entailed considerable expense on his part. In the light of these circumstances he made the offer to the Texas Company that he would set the casing and attempt to bring in the well; that that would be taken as a fulfillment of its contract. He was not absolutely bound by his contract to set the casing at this depth. It was the mutual desire of all parties to bring in a producing well; 3,500 feet was specified as the extreme limit to which plaintiff was required to go in an endeavor to accomplish this. A producing well was the end to be achieved by all parties.

The evidence establishes, or at least tends to establish, that after the casing was set it was impractical to attempt to drill the well to a greater depth.

On November 3, 1939, defendant knew that he had not been furnished with an account of the result of the Schlumberger test. The evidence is sufficient, we think, to tender the issue that in consideration of plaintiff's putting in the casing at the depth reached defendant would accept same as a compliance by plaintiff with his contract. We do not mean to say that the evidence is undisputed as to this matter. This issue was raised by the evidence. Further, there is a lack of evidence going to show that plaintiff on November 3 could not have complied with all of the conditions of the "bottom-hole" letter, many of which would seem to be of trivial character. But, we hold this issue was not presented by the pleadings in their present state and, of course, the defensive issue as to misrepresentation in procuring such modification of performance by defendant is not presented.

It is fundamental that a plaintiff relying on a cause of action on a contract must prove his compliance therewith or a legal excuse therefor. 17 C.J.S., Contracts, § 538, p. 1170; Beldon v. McColl, Tex.Civ. App., 21 S.W.2d 87; Smith v. Fort, Tex. Civ.App., 58 S.W.2d 1080; De Walt v. Universal Film Exchanges, Tex.Civ.App., 132 S.W.2d 421.

Waiver or modification of the manner of performance of a contract must be pleaded if relied upon. 17 C.J.S., Contracts, § 541, p. 1175; 10 Tex.Jur. p. 508, Sec. 295.

While defendant's answer sets up the contract of September 29, 1939, which un-

der the undisputed testimony governed, it nowhere refers to the transaction of November 3, 1939. Plaintiff nowhere mentions same. The evidence tends to show that upon a consideration defendant agreed to accept a different performance from that provided for in the governing contract.

■ It follows, we think, that the judgment rendered was not supported by the pleadings. Plaintiff failed to prove a cause of action within the issues raised by the pleading. In arriving at this conclusion we have assumed that taking into consideration the plaintiff's petition, the answer of defendant, that by the pleadings the issue was raised as to the performance of the contract evidenced by the letter of September 29, 1939. But the evidence is insufficient to show a compliance therewith.

Under the evidence as introduced there are, under amended pleadings, issues of merit to be determined between the parties in this case. Therefore, we have decided to reverse and remand this case rather than to reverse and render same. Many of the defenses urged are in the nature of a partial failure of consideration. If such defects in performance there were, and same were not waived, there seem to be no good reasons why same should not be compensated for by damages.

■ In view of another trial, one other matter merits consideration. Defendant pleaded, and here asserts, he did not

receive the kind of lease plaintiff contracted to convey to him; that his lease was to be subject only to the one-eighth royalty interest of the owner. This lease was accepted by the defendant with full notice of the obligations owed under the Texas Company contract. It was made in full contemplation of the terms of such contract—made and purchased to enable plaintiff to comply with the Texas Company contract. There is no merit in the contention. Insofar as the assignment to him, in our opinion, he received exactly what he contracted.

Defendant has made thirty-five assignments of error herein, briefed under some twenty propositions. We have disposed of this appeal on the ground there was a fatal variance between the proof of plaintiff and the allegations of the pleadings—a variance in that the contract proved was entirely different from the one alleged in his petition; that as to the contract pleaded by defendant (the true contract) there was no allegation plaintiff had ever performed same. The proof showed in fact that he had not performed in accordance with the terms of that contract.

In view of the fact that this case is reversed and remanded on other grounds, it is deemed unnecessary to discuss the assignments relating to the argument of plaintiff's attorney, as same will probably not arise in another trial.

Reversed and remanded.